

# NUMBER 13-10-00473-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**NOE HERNANDEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 148th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Vela, and Perkes
### Memorandum Opinion by Justice Rose Vela

A jury convicted appellant, Noe Hernandez, of two counts of aggravated kidnapping, a first-degree felony, *see* TEX. PENAL CODE ANN. § 20.04(a)(4), (c) (West 2011), six counts of aggravated sexual assault of a child, a first-degree felony, *id*. § 22.021(a)(1)(B), (e) (West Supp. 2011), and two counts of indecency with a child by sexual contact, a second-degree felony. *See id*. § 21.11(a)(1), (d) (West 2011). After

finding appellant had one prior felony conviction, the jury assessed punishment at life imprisonment plus a $10,000 fine for each offense. The sentences are to be served concurrently. By ten issues, appellant challenges the legal and factual[1] sufficiency of the evidence to support his convictions. We affirm.

## I. FACTUAL BACKGROUND

In the afternoon of May 19, 2007, fourteen-year-old T.K. and her best friend, fifteen-year-old K.V., went to the beach at Port Aransas, Texas where they met Stephen Shaler and Chris Lee, who were accompanied by appellant and Jason Hendershot. Before T.K. and K.V. returned to their beach house, they made plans to go to a bonfire that evening with Stephen and Chris. Late that evening, T.K. and K.V. walked down to the beach, expecting to be picked up by Stephen and Chris. Instead, appellant and Hendershot pulled up in a truck with a camper shell on it. Appellant told them, "'[G]et in. We're going to take you down to the bonfire. Stephen and Chris are already there. They just told us to come pick you up.'" Hearing this, T.K. and K.V. got in the truck, and appellant drove them several miles to a dark, deserted area of the beach. After parking near the jetties, appellant got out and asked K.V. to look at the stars with him. As T.K. and K.V. started to get out, Hendershot put his hand around T.K.'s neck, and appellant pulled K.V. out of the truck. Hendershot pinned T.K. to the seat of the truck and started to "strangle" her. He told her to take off her clothes, and when she refused, he said, "'Do what I say or I'm going to kill you. I have connections in Austin. I will hunt down your family. I will kill your family.'" She took off her clothes, and Hendershot laid her down

---

[1] The Texas Court of Criminal Appeals has abolished factual-sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011). Thus, we will only address appellant's legal-sufficiency challenges.

and put his mouth on her vagina.   Next, he got a phone and started "scanning" her naked body "up and down, . . . ."   T.K. testified Hendershot "was taking a video.   He was kind of narrating, . . . saying really uncomfortable things about me and describing me. . . ."   She stated he said, "'Oh, look at that virgin pussy,'" and he kept "touching me and scanning me up and down."   She said during this time, Hendershot also touched her breasts.   After Hendershot finished scanning her body, he told her to suck his penis.   When she refused, he forced her head down and made her "put [her] mouth on him."   After she did this, he pulled her on top of him and made her put her legs around him.   When the prosecutor asked her, "Did Jason Hendershot ever put his penis in your vagina?," she said, "Yes."

At some point, appellant opened the door to the truck, and Hendershot got out.   Appellant got in the truck, closed the door, and told T.K. to "put [her] mouth on his penis."   When she refused, he pulled her out of the truck.   T.K. saw that K.V. was underneath the truck's camper shell "in a ball crying."   Hendershot pulled K.V. out from under the camper shell, and appellant made T.K. get under the camper shell.   Then, appellant got under the camper shell with T.K, and told her to "put [her] mouth on his penis, . . . ."   When she refused, he grabbed her by the hair "and forced [her] head down onto him and [her] mouth onto his penis and forced [her] down."   T.K. testified that what appellant did to her

> made me sick, it like gagged me, and I threw up on him [appellant], all over like his stomach, and he just kind of wiped it off and made me keep going. And so, he continued to make me do that for a few more minutes, and then he told me to lay down on my back.   And so, he laid me down and told me to spread my legs apart, and he put his mouth on my vagina, and he also then got on top of me and put his penis inside of my vagina.
>
> *   *   *

3

[W]hen he was trying to put his penis inside of me it wasn't going, and he was getting really frustrated, and he kept spitting on his fingers and like rubbing it on me and on him. . . . [A]nd me [sic] told me to grab some baby oil, which was right behind me, so I did that, and he put that on him and me and continued to like have intercourse with me.

\* \* \*

He [appellant] did that for . . . quite awhile, and I . . . remember . . . [appellant] would . . . slap me and continue to force himself onto me and his penis into me, and then at one point he just stopped. . . .

Afterwards, all four got into the truck, and appellant dropped them off near the beach house where T.K. and K.V. were staying. T.K. testified she did not say anything about what happened because "I really believed that they were going to hunt us down and kill me and my family if I told." When the prosecutor asked T.K. if appellant ever touched her breast, she said, "Yes." When asked if "Hendershot insert[ed] his finger in [her] vagina?," she said, "Yes." She stated appellant and Hendershot led her to believe she and K.V. were going to a bonfire to meet Stephen and Chris.

K.V. testified that when she and T.K. were picked up by appellant and Hendershot, Hendershot got out of the truck and said, "'Get into the car [sic] . . . and we won't hurt you.'" When she and T.K. got in, appellant and Hendershot told them they were going to the bonfire to meet Stephen and Chris. When appellant parked the truck, he got out and told K.V. "to go look at the stars." At that point, Hendershot grabbed T.K. around the neck, and appellant grabbed K.V.'s hair and dragged her to the back of the truck. Appellant pushed K.V. into the back of the truck and tried to take off her clothes. When she resisted, he slapped her face and took off her clothes. He touched her "breast and [her] butt with his hands." He started to put his mouth on her breast, and he put his

4

fingers in her vagina. He made her put her mouth on his penis and then put his penis into her vagina. After appellant finished sexually assaulting K.V., he slapped her and warned her, "'If you try to run, I swear.'" Shortly thereafter, Hendershot came to the back of the truck, got on top of K.V., and put his penis into her vagina. After that, Hendershot told K.V. to put her mouth on his penis. She testified Hendershot, "[G]rabbed my hair and pushed my mouth down onto his penis." Afterwards, Hendershot told her to lay down, and "he put his mouth on my vagina and put his fingers in my vagina." Next, he again put his penis in her vagina. When he tried to put his penis in her "butt", she screamed, so he again put his penis in her vagina. Finally, Hendershot took her to the front of the truck, where he put his penis in her vagina and made her put her mouth on his penis. After Hendershot finished, he let K.V. put on her clothes.

K.V. testified appellant told her and T.K. that if they told anyone what happened, "he would find us and kill our families and us." When the prosecutor asked K.V., "Did it appear to you that the two of them [appellant and Hendershot] were working together in sexually assaulting you-all?," she said, "Yes, it did."

The defense rested its case at the guilt-innocence phase of the trial without calling any witnesses.

## II. DISCUSSION

### A. Aggravated Kidnapping

In issues one and two, appellant contends the evidence is legally insufficient to convict him of Counts One and Two, the aggravated kidnapping of T.K. and K.V.

5

### 1. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Consequently, we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said, quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *See id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "Furthermore, '[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d

6

114, 116 (Tex. Crim. App. 1992)), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).

### 2. Applicable Law

The Texas Penal Code provides that a person commits aggravated kidnapping "if he intentionally or knowingly abducts another person with the intent to: . . . (4) inflict bodily injury on [her] or violate or abuse [her] sexually; . . . ." TEX. PENAL CODE ANN. § 20.04(a)(4) (West 2011). Furthermore, the penal code provides the following definitions:

> (1) "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. Restraint is "without consent" if it is accomplished by:
>
> > (A) force, intimidation, or deception; . . .
>
> * * *
>
> (2) "Abduct" means to restrain a person with intent to prevent [her] liberation by:
>
> > (A) secreting or holding [her] in a place where [she] is not likely to be found; or
> >
> > (B) using or threatening to use deadly force.

*Id.* § 20.01(1), (2). The aggravating "intent" element need not coincide with the initial abduction, but may occur at any time during the ongoing course of the abduction. *See Kemple v. State,* 725 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1987, no pet.). The victim's testimony that she was sexually abused is sufficient to show appellant's intent. *Gibbons v. State,* 652 S.W.2d 413 (Tex. Crim. App. 1983).

7

### 3. Analysis

In this case, the charge's first application paragraph allowed the jury to convict appellant of the aggravated kidnapping of T.K. (Count One) if they found he

> with the intent to violate or abuse sexually [T.K.], intentionally or knowingly abduct [T.K.] by restricting the movements of said [T.K.] without her consent so as to interfere substantially with her liberty, by moving her from one place to another and/or confining her, with the intent to prevent her liberation, by secreting or holding her in a place where she was not likely to be found, . . .

The second application paragraph allowed the jury to convict appellant of the aggravated kidnapping of K.V. (Count Two) if they found the same elements as alleged in Count One.

Appellant argues there was no credible evidence T.K. and K.V. were held against their will, and the testimony showed they willingly got into the truck with him. We disagree. The evidence showed appellant did not have T.K.'s and K.V.'s consent to take them to the jetties. Instead, they entered his truck *after* he deceived them by saying he was going to take them to a bonfire. After they got into the truck, he drove them several miles to a dark, deserted area of the beach and parked near the jetties. No bonfire was in sight. Appellant got out of the truck, grabbed K.V. by the hair, took her to the back of the truck, and started sexually abusing her. After Hendershot finished sexually abusing T.K., appellant began to sexually abuse T.K., and Hendershot began to sexually abuse K.V.

Thus, appellant abducted K.V. and T.K. by restricting their movements without their consent, so as to interfere substantially with their liberty, by moving them from one place to another, thereby secreting them or holding them in a place where they were not likely to be found. After viewing all of the evidence in the light most favorable to the

8

verdict, we hold a rational jury could conclude beyond a reasonable doubt appellant committed two counts of aggravated kidnapping by intentionally or knowingly abducting both K.V. and T.K. with the intent to abuse them sexually.  Accordingly, the evidence is legally sufficient to support the two convictions for aggravated kidnapping.  Issues one and two are overruled.

## B. Aggravated Sexual Assault of K.V.

In issues three, four, and five, appellant contends the evidence is legally insufficient to support his three convictions for aggravated sexual assault of K.V.

### 1. Applicable Law

Section 22.021 of the Texas Penal Code provides, in relevant part:

(A) A person commits an offense:

    (1) if the person:

          * * *

(B) intentionally or knowingly:

    (i) causes the penetration of the anus or sexual organ of a child by any means;

    (ii) causes the penetration of the mouth of a child by the sexual organ of the actor;

    (iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

    (iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

    (v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and

(2) if:

(A) the person:

\* \* \*

(v) acts in concert with another who engages in conduct described by Subdivision (1) directed toward the same victim and occurring during the course of the same criminal episode; . . . .

*Id.* § 22.021(a)(1)(B)(i)-(v), (2)(A)(v) (West Supp. 2011). The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault of a child. *Perez v. State,* 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *Tear v. State,* 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

### 2. The Charge

The application paragraphs allowed the jury to convict appellant of three counts of aggravated sexual assault of a child (K.V.) if the jury found he intentionally or knowingly acted in concert with Jason Hendershot by:

engaging in conduct of sexual assault directed toward the same alleged victim, [K.V.], a child; and during the course of the same criminal episode, the said NOE HERNANDEZ did intentionally or knowing[ly] cause the penetration or contact of the female sexual organ of [K.V.], a child younger than 17 years of age and not the spouse of the Defendant, by the Defendant's finger, then you will find the Defendant guilty of Count 3: Aggravated Sexual Assault of a Child, . . . .

engaging in conduct of sexual assault directed toward the same alleged victim, [K.V.], a child, and during the course of the same criminal episode, the said NOE HERNANDEZ did intentionally or knowing[ly] cause the sexual organ of the Defendant NOE HERNANDEZ to contact or penetrate the mouth of [K.V.] a child younger than 17 years of age and not the spouse of the defendant, then you will find the Defendant guilty of Count 4: Aggravated Sexual Assault of a Child, . . . .

10

engaging in conduct of sexual assault directed toward the same alleged victim, [K.V.] a child; and during the course of the same criminal episode, the said NOE HERNANDEZ did intentionally or knowing[ly] cause the sexual organ of the Defendant NOE HERNANDEZ to contact or penetrate the female sexual organ of [K.V.] a child younger than 17 years of age and not the spouse of the defendant, then you will find the Defendant guilty of Count 5: Aggravated Sexual Assault of a Child, . . . .

### 3. Analysis

The evidence showed that appellant and Hendershot used deception in order to coax T.K. and K.V. into the truck. Appellant told them they were going to a bonfire, and Hendershot told them, "'Get into the car [sic] . . . and we won't hurt you.'" After appellant parked the truck at the jetties, he subdued K.V. by grabbing her hair and dragging her to the back of the truck. Hendershot subdued T.K. by putting his hands around her neck and strangling her. Once the victims were subdued, each perpetrator took turns sexually assaulting both victims.

Thus, a rational jury could have reasonably concluded that appellant acted in concert with Hendershot by engaging in conduct of sexual assault directed toward K.V. In addition, K.V. testified appellant put his fingers in her vagina. After that, he made her put her mouth on his penis, and then he put his penis into her vagina. Other evidence showed K.V. was not appellant's spouse and that she was under seventeen years of age when appellant sexually assaulted her. After viewing all of the evidence in the light most favorable to the verdict, we hold a rational jury could find beyond a reasonable doubt that appellant committed three separate acts of aggravated sexual assault of a child against K.V. Accordingly, the evidence is legally sufficient to support his convictions for three counts of aggravated sexual assault of a child. We overrule issues three, four, and five.

11

**C. Aggravated Sexual Assault of T.K.**

In issues seven, eight, and nine, appellant contends the evidence is legally insufficient to support his three convictions for aggravated sexual assault of a child against T.K.

**1. The Charge**

The application paragraphs allowed the jury to convict appellant of three counts of aggravated sexual assault of a child (T.K.) if the jury found he intentionally or knowingly acted in concert with Jason Hendershot by:

> engaging in conduct of sexual assault directed toward the same alleged victim, [T.K.]; a child; and during the course of the same criminal episode, the said NOE HERNANDEZ did intentionally or knowing[ly] cause the sexual organ of the Defendant, NOE HERNANDEZ, to contact or penetrate the female sexual organ of [T.K.], a child younger than 17 years of age and not the spouse of the Defendant, then you will find the Defendant guilty of Count 7:   Aggravated Sexual Assault of a Child, . . . .

> engaging in conduct of sexual assault directed toward the same alleged victim, [T.K.], a child; and during the course of the same criminal episode, the said NOE HERNANDEZ did intentionally or knowing[ly] cause the sexual organ of the Defendant, NOE HERNANDEZ, to contact or penetrate the mouth of [T.K.], a child younger than 17 years of age and not the spouse of the Defendant, then you will find the Defendant guilty of Count 8: Aggravated Sexual Assault of a Child, . . . .

> engaging in conduct of sexual assault directed toward the same alleged victim, [T.K.]; a child; and during the course of the same criminal episode, the said NOE HERNANDEZ did intentionally or knowing[ly] cause the penetration or contact of the female sexual organ of [T.K.], a child younger than 17 years of age and not the spouse of the Defendant, by the Defendant's finger, then you will find the Defendant guilty of Count 9: Aggravated Sexual Assault of a Child, . . . .

12

## 2. Analysis

The evidence showed appellant and Hendershot used deception to coax T.K. and K.V. into the truck. After appellant parked the truck, he subdued K.V. by grabbing her hair and dragging her to the back of the truck. Hendershot subdued T.K. by grabbing her neck and strangling her. Once the victims were subdued, each perpetrator took turns sexually abusing them. Thus, a rational jury could have reasonably concluded appellant acted in concert with Hendershot by engaging in conduct of sexual assault directed toward T.K.

Regarding the allegation that appellant "intentionally or knowing[ly] cause[d] the penetration or contact of the female sexual organ of [T.K.], . . . by [appellant's] finger," T.K. testified that when appellant "was trying to put his penis inside of me it wasn't going, and . . . he kept spitting on his fingers and like rubbing it on me and on him. . . ." She stated appellant put baby oil "on him and me and continued to like have intercourse with me." Thus, a rational jury could have reasonably concluded that appellant either contacted or penetrated T.K.'s female sexual organ with at least one of his fingers when he applied the baby oil and his saliva to her in order to facilitate sexual intercourse. Furthermore, the evidence showed appellant got under the camper shell with T.K, and told her to "put [her] mouth on his penis, . . . ." When she refused, he grabbed her by the hair "and forced [her] head down onto him and [her] mouth onto his penis and forced [her] down." T.K. also testified appellant "put his penis inside of my vagina." Other evidence showed T.K. was not appellant's spouse and that she was younger than seventeen years of age when appellant sexually assaulted her.

13

After viewing all of the evidence in the light most favorable to the verdict, we hold a rational jury could have found beyond a reasonable doubt appellant committed the three alleged acts of aggravated sexual assault of a child against T.K. Accordingly, the evidence is legally sufficient to support his convictions for three counts of aggravated sexual assault of a child against T.K. We overrule issues seven, eight, and nine.

## D. Indecency With A Child By Sexual Contact

In issues six and ten, appellant contends the evidence is legally insufficient to support his convictions for indecency with a child by sexual contact.

### 1. Applicable Law

Section 21.11 of the Texas Penal Code provides:

(a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; . . .

\* \* \*

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PENAL CODE ANN. § 21.11(a)(1), (c) (West 2011). A fact finder can infer the requisite, specific intent to arouse or gratify the sexual desire of any person "from the defendant's conduct, remarks, and all surrounding circumstances." *Breckenridge v.*

*State*, 40 S.W.3d 118, 128 (Tex. App.—San Antonio 2000, pet. ref'd) (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)). The testimony of a child victim alone is sufficient to support a conviction for indecency with a child. *Perez,* 113 S.W.3d at 838; *see* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Tear,* 74 S.W.3d at 560.

### 2. The Charge

The application paragraph allowed the jury to convict appellant of indecency with a child by sexual contact against T.K. if the jury found, in relevant part, he "with the intent to arouse or gratify the sexual desire of NOE HERNANDEZ, intentionally or knowingly engage[d] in sexual contact with [T.K.] by touching the breast of [T.K.], a child younger than 17 years of age, and not the spouse of the Defendant, . . . ." The application paragraph allowed the jury to convict appellant of indecency with a child by sexual contact against K.V. if the jury found, in relevant part, he "with the intent to arouse or gratify the sexual desire of NOE HERNANDEZ, intentionally or knowingly engage[d] in sexual contact with [K.V.] by touching the breast of [K.V.], a child younger than 17 years of age, and not the spouse of the Defendant, . . . ."

### 3. Analysis

K.V. testified that after appellant took off her clothes, he touched her "breast and [her] butt with his hands." The record showed that when the prosecutor asked T.K. if appellant ever touched her breast, she said, "Yes."

After viewing all of the evidence in the light most favorable to the verdict, we conclude a rational jury could find beyond a reasonable doubt that appellant with the intent to arouse or gratify his sexual desire, intentionally or knowingly engaged in sexual

15

contact with both T.K. and K.V. by touching the breast of each victim. We hold the evidence is legally sufficient to support the convictions for indecency with a child by sexual contact against T.K. and K.V. Issues six and ten are overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of March, 2012.

16